1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    BRADEN PARTNERS, LP, et al.,              Case No.14-cv-01689-JST

8                      Plaintiffs,

9           v.                                 **ORDER REGARDING CROSS-
                                               MOTIONS FOR SUMMARY
10   TWIN CITY FIRE INSURANCE                  JUDGMENT**
     COMPANY,
11                                             Re: ECF Nos. 152, 154
                      Defendant.

12          Before the Court are cross-motions for partial summary judgment.  Plaintiffs Braden

13   Partners, LP and Teijin Pharma USA, LLC (collectively, "Pacific Pulmonary Services") seek

14   summary judgment that Defendant Twin City Fire Insurance Company ("Twin City") has a duty

15   to advance defense costs incurred by Plaintiffs in the ███████████.  Twin City seeks

16   summary judgment that it does not owe Plaintiffs such a duty.  The Court grants Plaintiffs' motion

17   and denies Defendant's motion.

18   I.     **BACKGROUND**

19          **A.  Undisputed Facts**

20                  **i.  The Insurance Policy**

21          Twin City issued a general liability policy to Pacific Pulmonary Services, a medical

22   services and equipment company.  ECF No. 1 at 16.  Under that policy, Twin City agreed to "pay

23   on behalf of [Pacific Pulmonary Services] all Loss which [Pacific Pulmonary Services] shall

24   become legally obligated to pay as a result of a Claim first made against [Pacific Pulmonary

25   Services] and reported to [Twin City] during the Policy Period . . . for a Wrongful Act which takes

26   place during or prior to the Policy Period."  Id. at 30.  In turn, the policy defines a "Loss" as "sums

27   which [Pacific Pulmonary Services] are legally liable to pay solely as a result of any Claim insured

28

United States District Court
Northern District of California

by this Policy, including Claims Expenses, compensatory damages, settlement amounts and legal fees and costs awarded pursuant to judgments." Id. at 28.  A "Claim" is either "(a) a judicial or other proceeding against [Pacific Pulmonary Services] for a Wrongful Act and in which [Pacific Pulmonary Services] could be subject to a binding adjudication of liability for compensatory money damages or other civil relief . . . or (b) a written demand against [Pacific Pulmonary Services] for compensatory money damages or other civil relief on account of a Wrongful Act." Id. at 21.  And a "Wrongful Act" is "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty, breach of trust or breach of warranty of authority committed or attempted by [Pacific Pulmonary Services]." Id.

The policy includes several exclusions, one of which is relevant to the present dispute. The "Medical Incident Exclusion" excludes coverage "for, based upon, arising from, attributable to, related to, or in any way involving, directly or indirectly, the rendering or failure to render professional services in connection with [Pacific Pulmonary Services'] business as a provider of medical services." Id. at 42.  That exclusion goes on to provide some examples of "professional services," such as "providing medical, surgical, dental, psychiatric or nursing treatment, diagnosis or services." Id.

Although Twin City agreed in the policy to indemnify Pacific Pulmonary Services, subject to the exclusion noted above, it did not agree to defend Pacific Pulmonary Services in any underlying liability action brought against it.  To the contrary, the policy provides that "it shall be the duty of [Pacific Pulmonary Services] to defend against Claims made against [Pacific Pulmonary Services], and [Twin City] shall have no such duty or obligation." Id. at 20.

Although there is no duty to defend in the policy, however, Twin City does agree to advance defense costs to Pacific Pulmonary Services pursuant to the following provision:

> Except as otherwise provided in Section VII of this Policy, [Twin City] shall advance on behalf of [Pacific Pulmonary Services], Claims Expenses which they have incurred in connection with Claims made against [Pacific Pulmonary Services], prior to disposition of such claims, provided always that in the event it is finally established that [Twin City] has no liability hereunder for any advanced Loss, [Pacific Pulmonary Services] agree to repay [Twin City], upon demand, all such Loss advanced pursuant to this

2

Policy.[1]

Id. at 38. "Claims Expenses" are "reasonable and necessary costs, charges, fees (including attorneys' fees and experts' fees) and expenses incurred in the defense of a Claim . . . " Id. at 21.

The policy also includes an "Allocation" provision, which is triggered when "both Loss covered under this Policy and loss not covered under this Policy are incurred, either because a Claim against [Pacific Pulmonary Services] includes both covered and uncovered matters or because a Claim is made against both [Pacific Pulmonary Services] and others." ECF No. 1 at 24. In such a situation, Twin City and Pacific Pulmonary Services agreed that they "shall use their best efforts to agree upon a fair and proper allocation of such amount between covered Loss and uncovered loss." Id. If they agree on the allocation of Claims Expenses, Twin City "shall advance on a current basis Claims Expenses allocated to covered Loss." Id. If, however, "there can be no agreement on an allocation of Loss . . . [Twin City] shall advance on a current basis Claims Expenses which [it] believes to be covered under this Policy until a different allocation is negotiated, arbitrated, or judicially determined." Id.

**ii. The** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF No. 28-6, Ex. D at 139-156.

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮. Id. at 148. Pacific Pulmonary Services notified Twin City about ▮▮▮▮▮ on March 9, 2012. ECF No. 117-4 ¶ 19. On April 5, 2012, Twin City denied coverage for ▮▮▮▮▮. Id. On May 2, 2012, Pacific Pulmonary Services informed Twin City that it believed a ▮▮▮▮ ▮▮▮▮▮▮▮. ECF No. 70-3, Ex. B at 3. On June 1, 2012, Twin City again denied coverage for ▮▮▮▮▮, stating that they did not constitute a "Claim" as defined in the policy because they were ▮▮▮▮▮▮▮▮▮. ECF

---

[1] This endorsement replaced Section III of the policy, which states that "[Twin City] *may at its sole option and upon request*, advance . . . Claims Expenses." ECF No. 1 at 20 (emphasis added).

3

No. 69-11, Ex. C.

On July 10, 2012, Pacific Pulmonary Services notified Twin City that ███████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████. ECF No. 69-13 at 3-4.  Pacific Pulmonary Services explained that this was further evidence of ███████████████ that would be covered under the policy.  Id.  Twin City denied coverage again on July 19, 2012, stating that ███████████ were not a "Claim" under the policy.  ECF No. 69-15 at 3.  Twin City did, however, acknowledge that Pacific Pulmonary Services has "provided notice of a specific Wrongful Act" such that "any subsequent Claim arising from the purported Wrongful Acts alleged in the letters shall be deemed to be a Claim made during the August 15, 2011 to June 1, 2012 Policy Period, and coverage for that Claim shall be subject to the terms and conditions of that Policy."  Id. at 4.

On August 2, 2013, ████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████. ECF No. 89-9.  ████ ███████████████████████████████████████████████████ Id.

On August 8, 2013, ██████████████████████████████████████████████ ████████████████████████████████████. ECF No. 102-4 ¶ 28.  ████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ Id. ¶ 29.

Pacific Pulmonary Services provided Twin City with a ███████████████ ██████████ on August 21, 2013.  Id. ¶ 30.  Twin City acknowledged that the ████████████ constituted a "Claim" under the policy, but nonetheless denied coverage under various exclusions.  Id ¶ 31.  Twin City denied coverage again in January 2014.  Id. ¶ 32.

**B.  Procedural History**

Plaintiffs filed this coverage action on April 11, 2014, alleging that Twin City breached the

United States District Court
Northern District of California

1  terms of the policy and its covenant of good faith and fair dealing by refusing to advance defense

2  costs for ███████████████████████. ECF No. 1.

3      On June 6, 2014, Twin City moved to dismiss the complaint, arguing that ████████

4  were not "Claims" under the policy and that ██████████████ was excluded from coverage

5  based on the Medical Incident Exclusion and the Professional Errors and Omissions Exclusion.

6  See id. The Court agreed with Twin City that █████████ were not "Claims" under the policy,

7  and therefore concluded that the policy did not cover ██████-related costs. See id. However,

8  the Court held that the two exclusions did not apply. See id.

9      On January 30, 2015, Twin City filed a motion for judgment on the pleadings, asserting

10  that the ████████████████ neither qualified as a "Claim" nor had it been "first made" against

11  Plaintiffs ████████████████████ ECF No. 66. The Court granted Twin City's

12  motion ████████████████████████████████████████████████

13  ███████████████████████████████. ECF No. 87. The Court noted, however,

14  that Plaintiffs could re-file the complaint if and when ████████████████████████. Id.

15  The Court granted Plaintiffs leave to amend their pleadings. ECF No. 101.

16      On August 28, 2015, Plaintiffs filed their first amended complaint, alleging that the August

17  2, 2013 letter from ██████████████ qualified as a "Claim" under the policy. ECF No.

18  102-4 ¶ 2. Plaintiffs assert four claims: declaratory relief to establish Twin City's duty to advance

19  defense costs, declaratory relief to establish Twin City's duty to indemnify for the underlying

20  claim, breach of contract for failure to advance defense costs, and breach of the covenant of good

21  faith and fair dealing. Id. at 12-15.

22      On September 11, 2015, Twin City filed a motion to dismiss the first amended complaint,

23  arguing in part that the August 2013 letter from ████████████████ was not a "Claim"

24  under the policy. ECF No. 106. The Court rejected Twin City's "attempts to compartmentalize

25  ████████████████████████████████████████████" holding that the

26  ████████████████ letter qualified as a "Claim" because it was a written demand that sought

27  compensatory monetary damages on account of a "Wrongful Act." ECF No. 116. The Court

28  stressed that ████████████████████████████████████████████████

United States District Court
Northern District of California

1    ██████" and, therefore, "██████████████████████████████████

2    ████████████████████" Id.

3        On July 21, 2016, the Court granted Twin City's motion to stay Plaintiffs' claims for

4    declaratory relief regarding the duty to indemnify, breach of contract, and breach of the covenant

5    of good faith and fair dealing because those claims "are not yet ripe" ██████████████

6    ██████████████. ECF No. 138. However, the Court held that it can and should resolve

7    whether Twin City has a duty to advance defense costs now to ensure that Plaintiffs did not lose a

8    benefit under the policy. Id. The Court agreed with Plaintiffs that "[t]he entire purpose of the

9    duty to advance defense costs is to ensure that a policyholder has the insurance proceeds available

10   to defend against an underlying action." Id.

11       On September 29, 2016, Twin City and Pacific Pulmonary Services filed cross motions for

12   summary judgment on the Plaintiffs' claim for declaratory relief regarding Twin City's duty to

13   advance defense costs. See ECF Nos. 152, 153-5. Twin City argues that both California law and

14   the policy's Medical Incident Exclusion preclude any duty to advance defense costs. See id.

15   Plaintiffs argue that Twin City has an existing duty to advance claims expenses that is not affected

16   by the allocation provision in the policy. See id.

17   **II.   JURISDICTION**

18       The Court has jurisdiction pursuant to 28 U.S.C. § 1332. The parties are completely

19   diverse and the alleged amount in controversy exceeds $75,000.

20   **III.   LEGAL STANDARD**

21       Summary judgment is proper when a "movant shows that there is no genuine dispute as to

22   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

23   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

24   citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A

25   party also may show that such materials "do not establish the absence or presence of a genuine

26   dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.

27   Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable

28   fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–

United States District Court
Northern District of California

6

49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id.  "In considering

a motion for summary judgment, the court may not weigh the evidence or make credibility

determinations, and is required to draw all inferences in a light most favorable to the non-moving

party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.1997).

Where the party moving for summary judgment would bear the burden of proof at trial,

that party bears the initial burden of producing evidence that would entitle it to a directed verdict if

uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474,

480 (9th Cir.2000).  Where the party moving for summary judgment would not bear the burden of

proof at trial, that party bears the initial burden of either producing evidence that negates an

essential element of the non-moving party's claim, or showing that the non-moving party does not

have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If

the moving party satisfies its initial burden of production, then the non-moving party must produce

admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir.2000).

The non-moving party must "identify with reasonable particularity the evidence that

precludes summary judgment."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996).  It is not the

duty of the district court to "to scour the record in search of a genuine issue of triable fact."  Id.

"A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for

summary judgment; rather, the nonmoving party must introduce some significant probative

evidence tending to support the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150,

1152 (9th Cir.1997) (citation and internal quotation marks omitted).  If the non-moving party fails

to make this showing, the moving party is entitled to summary judgment.  Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).

IV.    ANALYSIS

The only issue currently before the Court is the existence and scope of Twin City's duty to

advance claims expenses incurred by the Plaintiffs in connection with their defense of the

1   ██████████████.[2]  Twin City argues that it does not have such a duty for two

2   independent reasons: (1) California law precludes insurance coverage for willful acts like those of

3   which Plaintiffs are accused in the ██████████████; and (2) the Medical Incident Exclusion in

4   the policy bars coverage where, as here, the underlying claim relates to Plaintiffs' provision of

5   "professional services."  In the alternative, Twin City argues that, "[e]ven assuming a duty to

6   advance expenses . . . factual disputes remain regarding the amount of expenses that should

7   be advanced."  ECF No. 157-5 at 6.

8                    **A. Twin City Has an Existing Duty to Advance Claims Expenses**

9            Plaintiffs bear the initial burden of establishing "that the occurrence forming the basis of

10   its claim is within the basic scope of insurance coverage."  Aydin Corp v. First State Ins. Co., 18

11   Cal. 4th 1183, 1188 (1998).

12          Twin City does not seriously dispute that the policy requires it to advance claims expenses

13   to Pacific Pulmonary Services.  See ECF No. 157-5 at 13 ("Twin City has already acknowledged

14   its duty to advance reimbursement for defense expenses . . . ").  Nor could it:  the policy clearly

15   states that "[Twin City] *shall advance* on behalf of [Pacific Pulmonary Services], Claims

16   Expenses which they have incurred in connection with Claims made against [Pacific Pulmonary

17   Services], prior to disposition of such claims."  ECF No. 1 at 38 (emphasis added).  Such "Claims

18   Expenses" include "reasonable and necessary costs, charges, fees (including attorneys' fees and

19   experts' fees) and expenses incurred in the defense of a Claim . . . "  Id. at 21.

20          Pacific Pulmonary Services has satisfied the two conditions for advancement of Claims

21   Expenses.  First, this Court has already determined that both the ██████████████ and the

22   ██████████████ written demand letter constitute a single "Claim" against Pacific

23   Pulmonary Services for a "Wrongful Act" under the policy.  See ECF No. 116 at 7-17, 19.

24   Second, Pacific Pulmonary Services has incurred expenses in its defense against that Claim.

25   Teshima Decl. ¶¶ 28, 32.  Based on the plain terms of the policy, then, Twin City has an existing

26

27   ─────────────────────
     [2] The Court previously severed and stayed Plaintiffs' three other causes of action for declaratory
28   relief regarding Twin City's duty to indemnify, breach of contract for failure to advance defense
     costs, and breach of the covenant of good faith and fair dealing.  See ECF No. 138.

United States District Court
Northern District of California

1    duty to advance Plaintiffs' Claims Expenses.

2    **B. California Insurance Code Section 533 Does Not Apply**

3        Twin City argues that California law nonetheless negates its duty to advance defense costs

4    for the willful conduct alleged in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5        "Section 533 precludes insurance coverage (i.e., indemnification) for a '*wilful act*.'"

6    Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478, 499 (1998) (emphasis in original)

7    (quoting Cal. Ins. Code § 533). The purpose of § 533 is to prevent the moral hazard that might

8    result if intentional tortfeasors could be indemnified for their willful wrongdoing. See California

9    Amplifier, Inc. v. RLI Ins. Co., 94 Cal. App. 4th 102, 116 (2001). Section 533 operates as "an

10   implied exclusionary clause which by statute is to be read into all insurance policies." Id. (internal

11   quotation marks and citations omitted). Therefore, Twin City bears the burden of proving that

12   section 533 excludes coverage. See Unified W. Grocers, Inc. v. Twin City Fire Ins. Co., 457 F.3d

13   1106, 1111 (9th Cir. 2006).

14       Although section 533 bars indemnification for claims of willful misconduct, it does not

15   allow an insurer to evade a "specific and distinct commitment" under the policy where the insured

16   has a reasonable expectation regarding that commitment. Downey Venture, 66 Cal. App. 4th at

17   507–08. For example, the Downey Venture court distinguished a situation in which "the insured

18   sought coverage under the general liability provisions" (i.e. the indemnity provisions) from a

19   situation in which the insured seeks the benefit of a "separate specific promise." Id. at 509.

20   Because the policy in that case included "the express promise to provide a defense to malicious

21   prosecution claims," the court found that the insureds reasonably expected that such a defense

22   would be provided. Id. As a result, the insurer could not evade that specific duty, which existed

23   independently of the duty to indemnify, simply by referencing section 533. See id. At least one

24   court has extended Downey Venture to hold that statutes like section 533 do not negate an

25   insurer's separate duty to advance defense costs. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.

26   v. Guam Hous. & Urban Renewal Auth., 2003 Guam 19 (Guam Nov. 4, 2003) ("Even assuming

27   indemnification for the [underlying] claims would be precluded by [a Guam statute that mirrors

28   section 533], we find that [the insurer] would nonetheless have had a duty to pay defense costs for

1    those claims.").

2        Twin City expressly disclaimed any duty to defend Plaintiffs, but it nonetheless agreed to a

3    different kind of defense obligation: a separate promise to advance Plaintiffs' defense costs.

4    Contrary to Twin City's assertion, this duty is distinct from its "indemnity obligation." See ECF

5    No. 151-5 at 16. Instead of simply including defense costs in the definition of covered "Loss"

6    under the policy's general indemnification provision, the policy includes a separate promise to

7    "*advance*" defense costs incurred by Pacific Pulmonary Services "prior to disposition of [the

8    underlying] claims," subject to Twin City's right to repayment upon a final determination of

9    coverage. See ECF No. 1 at 38 (emphasis added). Through this policy language, Twin City made

10   a distinct promise to advance the costs incurred defending against claims, separate and apart from

11   its promise to ultimately indemnify the Plaintiffs. This policy language also created a reasonable

12   expectation on the part of the insured.[3] As a result, Twin City is still required to fulfill its defense-

13   funding commitment regardless of whether section 533 prohibits indemnification. Downey

14   Venture, 66 Cal. App. 4th at 508.

15       This interpretation of section 533 makes sense when one considers the policy rationale

16   underlying the statute, which is to ensure that tortfeasors are not immunized from the

17   consequences of their willful wrongdoing through insurance coverage. "[T]he public policy

18   concerns applicable to an insurer's indemnification do not extend to the provision of a defense"

19   because "[a]n agreement to *defend* an insured upon mere accusation of a wilful tort does not

20   encourage such wilful conduct." Downey Venture, 66 Cal. App. 4th at 508 (emphasis in original)

21   (internal quotation marks and citations omitted). The same is true of an agreement to advance

22   defense costs subject to repayment. If the Plaintiffs are ultimately found liable for any willful

23   misconduct alleged in the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Twin City can argue that section 533

24   prohibits indemnification. Until then, enforcing the advancement provision in the policy will not

25

26   ─────────────────
     [3] A separate exclusion in the policy, Endorsement 5, also helped to create a reasonable expectation
27   that Twin City would advance defense costs for willful conduct even if it would not ultimately
     indemnify that conduct. See ECF No. 7 at 32 (excluding coverage for "willful violation[s] of
28   law," but explaining that the exclusion "shall apply only if the gain or conduct described therein *is
     established by any final adjudication*").

United States District Court
Northern District of California

1   undermine the purpose of section 533.

2       In sum, the Plaintiffs are not asking Twin City to indemnify them for wrongdoing at this

3   juncture; they are simply requesting that Twin City honor its separate and distinct commitment to

4   advance defense costs.  Because the Court concludes that section 533 does not impact that duty,

5   but rather just Twin City's ultimate duty to indemnify, it does not need to decide whether the

6   underlying claims involve willful conduct.

7       **C. Medical Incident Exclusion**

8       Next, Twin City argues that the Medical Incident Exclusion is an independent reason to

9   grant summary judgment in its favor.  ECF No. 151-5 at 17-22.  According to Twin City, the

10  ███████████████████████ arose as a direct result of Pacific Pulmonary Services' performance

11  of professional medical services and, as a result, is barred by the Medical Incident Exclusion.  Id.

12  Twin City bears the burden of proving that this exclusion bars coverage.  See Aydin, 18 Cal. 4th at

13  1188.

14      There is a threshold dispute between the parties as to whether the Court may even consider

15  this argument again, given that it previously rejected this argument at the motion to dismiss stage.

16  See ECF No. 52.  The Court rejected "Twin City's broad reading of the medical services

17  exclusion" when ruling on its motion to dismiss, finding that █████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████. Id. at

20  5-6.  The Court explained there that ██████████████████████████████

21  ████████████████████████████████████████████████████

22  ███████████████████████████████████████████

23  ███████████████████████████ Id.  The Court also noted that Twin City's reading of

24  the exclusion would render coverage illusory by barring recover for any claim related to the

25  company's business.  Id.

26      Based on the Court's prior ruling at the motion to dismiss stage, Plaintiffs argue that Twin

27  City's renewed argument based on the Medical Incident Exclusion is barred by the doctrine of law

28  of the case and the Local Rules' procedural requirements for reconsideration.  ECF No. 155-5 at

United States District Court
Northern District of California

13. This argument fails. Given the different standards for motions to dismiss and motions for summary judgment, courts may (and routinely do) reconsider the same legal arguments at the summary judgment stage. See Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.1, n. 15 (2d ed.) (summarizing cases); Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014), cert. denied, 135 S. Ct. 946 (2015) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). The Court may therefore consider Twin City's argument based on the Medical Incident Exclusion.

That said, nothing has changed since this Court last considered the issue. Again, Twin City argues that ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████. ECF No. 151-5 at 19-22. Based on ████████████████, Twin City concludes that Pacific Pulmonary Services rendered "professional services" when it ██████████████████████████████████████████████████████ Id. Importantly, ████████████████ that Twin City relies on ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ ECF No. 151-5 at 19 (emphasis added). ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ Id. Twin City's argument is therefore based on its erroneous conflation of "████████" with "professional." See Medical Records Associates, Inc. v. American Empire Surplus Lines Ins. Co., 142 F.3d 512, 515 (1st Cir. 1998) ("Simply because a task is regulated does not make it 'professional.'").

California courts have generally defined "professional services" in the context of an insurance exclusion to mean services "arising out of a vocation, calling, occupation, or

United States District Court
Northern District of California

1   employment involving specialized knowledge, labor, or skill, and the labor or skill involved is

2   predominantly mental or intellectual, rather than physical or manual." Tradewinds Escrow, Inc. v.

3   Truck Ins. Exch., 97 Cal. App. 4th 704, 713 (2002) (internal quotation marks omitted) (quoting

4   Hollingsworth v. Commercial Union Ins. Co., 208 Cal.App.3d 800, 806 (1989)). Where, as here,

5   the policy provides its own definition of "professional services," the policy's definition controls.

6   See N. Ctys. Eng'g, Inc. v. State Farm Gen. Ins. Co., 224 Cal. App. 4th 902, 929 (2014), review

7   denied (June 11, 2014) (distinguishing the instant case from cases where "professional services"

8   was not defined). Like all exclusionary clauses, "professional services" exclusions are interpreted

9   narrowly against the insurer. MacKinnon, 31 Cal. 4th at 648.

10       The Medical Incident Exclusion here only excludes coverage for "professional services"

11   rendered "in connection with [Pacific Pulmonary Services'] business as a provider of medical

12   services." ECF No. 1 at 42. Construed narrowly against the insurer, this provision only bars

13   coverage for *medical* professional services, not professional services writ large. This

14   interpretation is further supported by the examples of "professional services" listed in the

15   exclusion. For example, the exclusion states that "professional services" include "providing

16   medical, surgical, dental, psychiatric or nursing treatment, diagnosis or services," as well as

17   "providing services as a member of or as a participant in a formal medical accreditation or other

18   medical professional board or committee . . . , of a hospital or a professional society . . . " These

19   examples confirm that the exclusion only bars coverage for the provision of medical professional

20   services.

21       With this interpretation in mind, the Court again concludes that ███████████████

22   ████████████████████████████████████████████████ was not the rendering of

23   a medical professional service, ████████████████. See ECF No. 52 at 4-7. ████████

24   ████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████ In other contexts, California law has consistently distinguished between the

28   provision of professional medical services, on the one hand, and the ███████████████, on

the other hand. See, e.g., San Diego Hosp. Assn. v. Superior Court, 30 Cal. App. 4th 8, 13–14 (1994) (summarizing a case in which "[t]he court distinguished those who are 'mere conduits' for distributing a product to consumers and the physician who furnishes his services a healer of illnesses," and noting "[i]n the first instance the essence of the transaction relates to the product being sold while in the second instance the physician is being paid for his professional services and skill in diagnosing and treating a patient and not for a product"); Silverhart v. Mount Zion Hosp., 20 Cal. App. 3d 1022, 1027 (Ct. App. 1971); Hector v. Cedars-Sinai Med. Ctr., 180 Cal. App. 3d 493, 502 (Ct. App. 1986) (characterizing "hospitals as providers of professional medical services, not suppliers of products"). And courts have rejected similar arguments from insurers who claim that the insured's "manufacture, marketing, and sale of pharmaceutical products" constitutes professional services for the purpose of an exclusionary clause. See, e.g., Scottsdale Ins. Co. v. Coapt Sys., Inc., No. C-12-1780 MMC, 2013 WL 3146781, at *5–6 (N.D. Cal. June 18, 2013) (noting that the insurer had not "cite[d] to any authority holding a business engaged in the sale and marketing of products used by professionals is, by reason of such sales activity, itself rendering 'professional services'").

Because Plaintiffs' alleged misconduct involves the ██████████████ and not the provision of professional medical services, Twin City has not satisfied its burden of showing that the Medical Incident Exclusion applies to bar coverage.

## D. Scope of Twin City's Duty to Advance Claims Expenses

Having established that Twin City has a duty to advance claims expenses, the Court now turns to the heart of the parties' dispute. The central point of disagreement in this case is not *whether* Twin City has a duty to advance claims expenses, but rather *which* claims expenses Twin City is obligated to advance. That dispute raises two distinct questions: (1) whether Twin City's duty to advance claims expenses applies to expenses incurred defending against potentially covered claims; and (2) whether the policy's allocation provision applies here such that Twin City is only required to advance claims expenses that it believes are covered under the policy.

### i. The Potential Coverage Standard Applies to Twin City's Duty to Advance Claims Expenses

Twin City argues that, like its duty to indemnify, its duty to advance claims expenses extends only to claims that are actually covered under the policy. The Plaintiffs, on the other hand, posit that Twin City's duty to advance claims expenses tracks case law regarding the duty to defend and therefore extends to potentially covered claims.

Under California law, insurers have two primary duties to the insured: the duty to defend and the duty to indemnify. See Buss v. Superior Court, 16 Cal. 4th 35, 45-49 (1997). While an insurer is only required to indemnify its insured for claims that are actually covered under the policy, it has a broader duty to defend its insured against claims that are even potentially covered. See id. In addition, an insurer has a duty to defend mixed actions—i.e., actions that involve both covered and uncovered claims—in their entirety. See id. This potential coverage standard guarantees that the insurer "meaningfully" and "immediately" provides what the insured bargained for: "the mounting and funding of a defense." Id.

Of course, this dispute deals with neither the duty to defend nor the duty to indemnify. The policy at issue here explicitly disclaims any duty to defend on the part of Twin City, and the Plaintiffs do not contend that Twin City has a duty to defend it against the underlying claim. See ECF No. 1 at 20; ECF No. 161-4 at 4. Although the policy does include a duty to indemnify, the Court has stayed the Plaintiffs' claim for declaratory relief regarding the duty to indemnify. See ECF No. 138 at 7. The instant dispute asks only whether Twin City has a duty to advance Plaintiffs' defense costs.

The Ninth Circuit has previously suggested that an insurer's duty to pay defense costs, like an insurer's duty to defend, extends to claims that are potentially covered under the policy. See Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 502–03 (9th Cir. 1993) (explaining that the insured was required "to show that the [underlying] complaint '*potentially* seeks damages within the coverage of the policy'" in order to "establish[] [the insurer's] obligation to pay [the insured's] defense costs under the policy") (emphasis in original) (quoting Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966)). Although this language suggests that the potential coverage standard applies to the insurer's duty to advance defense costs, the

15

Olympic Club court did not directly address the issue, so the Court looks beyond that decision.

Courts that have subsequently addressed this question have reached seemingly divergent results. On the one hand, at least three courts have applied the potential coverage standard to the insurer's duty to advance defense costs. See Legacy Partners, Inc. v. Clarendon Am. Ins. Co., No. 08CV920 BTM (CAB), 2010 WL 1495198 (S.D. Cal. Apr. 14, 2010); Health Net, Inc. v. RLI Ins. Co., 206 Cal. App. 4th 232 (2012), as modified on denial of reh'g (June 12, 2012); Acacia Research Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. SACV 05-501 PSG MLGX, 2008 WL 4179206 (C.D. Cal. Feb. 8, 2008). Other courts have reached the opposite conclusion, holding that the insurer is only obligated to advance defense costs for claims that are actually covered under the policy. See Jeff Tracy, Inc. v. U.S. Specialty Ins. Co., 636 F. Supp. 2d 995 (C.D. Cal. 2009); Petersen v. Columbia Cas. Co., No. SACV 12-00183 JVS, 2012 WL 5316352 (C.D. Cal. Aug. 21, 2012).

Courts that have applied the potential coverage standard have relied on policy language, the Ninth Circuit's decision in Olympic Club, California law requiring courts to construe insurance policies in favor of coverage, and persuasive authority from other states. For example, the Legacy Partners and Health Net courts relied on the policy's use of the word "alleged" when defining the scope of the insurer's duty to advance defense costs. See, e.g., Health Net, 206 Cal. App. 4th at 258-59 (explaining that the policy "require[d] Defendant to pay for defense costs arising out of 'civil proceeding[s] in which damages because of . . . Property Damage . . . to which this insurance applies are *alleged*'") (emphasis in original); Legacy Partners, 2010 WL 1495198, at *4-5 (stressing that "the scope of the insurer's duty is defined as defense costs incurred 'in defense of any Claim or Law Suit brought against the Insured *alleging a Wrongful Act*....'") (emphasis in original). The Legacy Partners court explained that "[t]he Policy's use of the word 'alleged' [was] critical to the Court's analysis" because "[a]llegations, by their nature, are not facts," but they "have the *potential* to become facts." Legacy Partners, 2010 WL 1495198 at *4-5 (emphasis in original). The use of the word "alleged" therefore suggested that the duty to advance defense costs, like the duty to defend, extended to potentially covered claims. See id. The Legacy Partners court noted that such an interpretation was consistent with California law,

16

1    which requires courts to broadly interpret coverage in favor of the insured, and the Ninth Circuit's

2    implicit guidance in Olympic Club.  See id.  The Acacia court similarly concluded that the

3    "Defendant was required to advance defense costs for potentially covered claims," but it based its

4    conclusion on persuasive authority from other states.  Acacia, 2008 WL 4179206 at *11 (citing

5    case law from Delaware and Massachusetts that holds that the duty to advance defense costs must

6    be interpreted in the same way as the duty to defend because "it would be an anomaly to require

7    [an insurer] to advance defense costs only for meritorious claims") (quoting Hurley v. Columbia

8    Cas. Co., 976 F.Supp. 268, 275 (D. Del. 1997)).

9         Courts that have reached the opposite conclusion have relied on policy language that

10   supposedly "tempered" the insurer's duty to pay defense costs.  Jeff Tracy, 636 F. Supp. 2d at

11   1003-04 (C.D. Cal. 2009).  For example, in Jeff Tracy, the court relied on the fact that the policy

12   did not include a duty to defend, required the insured to obtain the insurer's consent before

13   incurring defense costs, and allowed the insurer to allocate defense costs when the underlying

14   claim involved both covered and uncovered loss.  See id.  The court explained that"[t]hese

15   conditions are not consistent with the broader duty to defend standard," and therefore concluded

16   that "imposing a duty to pay all defense costs once a potential for coverage is shown runs contrary

17   to the terms of the policy."  Id.  The Petersen court similarly found that the potential coverage

18   standard did not apply because the insurer's duty to advance defense costs was subject to the same

19   conditions.  See Petersen v. Columbia Cas. Co., No. SACV 12-00183 JVS, 2012 WL 5316352, at

20   *8-*10 (C.D. Cal. Aug. 21, 2012).

21        The Court finds that the best way to harmonize these two conflicting lines of precedent is

22   to focus on the specific policy language at issue.  Here, the policy language suggests that Twin

23   City's duty to advance defense costs is triggered by potentially covered claims.  The policy

24   requires Twin City to "*advance . . . Claims Expenses which* [Pacific Pulmonary Services] have

25   incurred in connection with Claims made against [Pacific Pulmonary Services] *prior to disposition*

26   *of such claims.*"  ECF No. 1 at 38 (emphasis added).[4]  Because "[n]o one can determine whether

27

28   ---

[4] Although the original policy language allowed Twin City to advance such expenses "at its sole
option and upon request," the endorsement made Twin City's advancement of claims expenses

17

the third party suit does or does not fall within the indemnification coverage of the policy until that suit is resolved," this language necessarily contemplates potential, rather than actual, coverage. Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 271–72 (1966). In addition, the policy defines a "Claim" as "a judicial or other proceeding . . . for a Wrongful Act," and a "Wrongful Act" is defined as "any actual *or alleged* error, misstatement, misleading statement, act, omission, neglect, breach of duty, breach of trust or breach of warranty of authority committed or attempted by [Plaintiffs]." ECF No. 1 at 21. Therefore, as in Legacy Partners and Health Net, the policy requires Twin City to advance costs incurred defending against "alleged" wrongdoing, which suggests that potential coverage is sufficient to trigger the duty. Finally, the policy gives Twin City the right to repayment of those defense costs "in the event it is finally established that [Twin City] has no liability hereunder for any advanced Loss." Id. at 38. This right to repayment after a final determination of coverage only makes sense if the duty to advance defense costs is triggered by potential coverage. The policy language at issue here therefore suggests that Twin City's duty to advance defense costs is triggered by potential coverage.

The policy's duty to advance defense costs also exists independently of the duty to indemnify, which further suggests that the actual coverage standard does not apply. The policy at issue in Jeff Tracy only provided for "Defense Costs" as part of the definition of covered "Loss" for indemnity purposes." See Jeff Tracy, 636 F. Supp. 2d at 999. It is common for director and office policies to provide for defense costs in this way—i.e., solely "as an ingredient of 'loss.'" Id. at 1003 (internal quotation marks and citations omitted). When the duty to pay defense costs derives entirely from the duty to indemnify, courts have found that the actual coverage standard applies. See Health Net, 206 Cal. App. 4th at 259 ("[I]n the absence of a contractual duty to defend, when defense costs are recoverable *only* as covered losses, only those defense costs which were actually related to the defense of covered claims may be reimbursed.") (emphasis in original). Here, however, the policy does not just include "Claims Expenses" in the definition of "Loss" for indemnification purposes; it also includes a separate provision that affirmatively

mandatory. See id. at 20, 38.

18

1    requires Twin City to advance defense costs. In other words, the duty to advance defense costs is

2    not dependent on the duty to indemnify in a way that would suggest that an actual coverage

3    standard applies.

4          The Court is not persuaded by Twin City's argument that the policy's disclaimer of a duty

5    to defend necessarily means that the duty to advance defense costs cannot be triggered by a

6    potentially covered claim. See ECF No. 157-5 at 9. The duty to defend and the duty to advance

7    defense costs are conceptually distinct: An insurer may have a duty to advance defense costs even

8    if it does not have a duty to defend the insured against an underlying claim. See, e.g., Gon v. First

9    State Ins. Co., 871 F.2d 863, 867–68 (9th Cir. 1989) (explaining that, although the insurer did not

10   have a duty to defend under the policy, it nonetheless had a "duty . . . to pay defense expenses as

11   incurred" under the policy's general indemnification provision, which "cover[ed] legal expenses

12   as a loss item"); Okada v. MGIC Indem. Corp., 823 F.2d 276, 279-282 (9th Cir. 1986) (holding

13   that the insurer had a duty to pay defense costs as they were incurred because "[t]he costs of the

14   'defense of legal actions' [were] included in the definition of 'Loss' [in the policy]"). It is

15   therefore unclear how the absence of a contractual duty to defend would in any way "temper[]" the

16   insurer's duty to advance defense costs. Jeff Tracy, 636 F. Supp. 2d at 1003-04 (C.D. Cal. 2009).

17         Jeff Tracy and its progeny seem to reach that conclusion by conflating the "duty to defend"

18   with the potential coverage standard that courts use to determine when the duty to defend is

19   triggered. See, e.g., Impac Mortg. Holdings Inc. v. Houston Cas. Co., No. SACV 11-1845-JST,

20   2013 WL 4045362, at *5–6 (C.D. Cal. Feb. 26, 2013), aff'd, 634 F. App'x 614 (9th Cir. 2016)

21   ("Because the Policies provide only for the advancement of claim expenses, the duty to defend

22   standard does not apply in this case."). It is axiomatic that the "duty to defend" will not apply to

23   an insurance policy that does not impose a duty to defend on the insurer. And it is true that an

24   insured who has purchased such a policy has bargained for lesser rights than they might have. But

25   that does not mean that the distinct duty to advance defense costs contained within such an

26   agreement cannot be triggered by potentially covered claims as a matter of law. After all,

27   insurance policies, like any other contract, hinge on the parties' intent as expressed in the written

28   agreement. See Safeco Ins. Co. of Am. v. Robert S., 26 Cal. 4th 758, 765 (2001) ("When

United States District Court
Northern District of California

1     reasonably practical, contracts are to be interpreted in a manner that makes them reasonable and

2     capable of being carried into effect, and that is consistent with the parties' intent.") (citing Cal.

3     Civ. Code § 1643). Therefore, to determine whether the duty to advance defense costs is triggered

4     by potentially covered claims or covered claims, the court must look first and foremost to the

5     policy language. See Waller, 11 Cal. 4th at 18. As explained above, the policy language here

6     suggests that the duty to advance defense costs is triggered by potentially covered claims.

7              Several public policy rationales bolster that conclusion. Although these rationales have

8     been discussed primarily in relation to an insurer's duty to defend, they apply with equal force to

9     the insurer's duty to advance defense costs. For example, the California Supreme Court has

10    explained that "[i]mposition of an immediate duty to defend is necessary to afford the insured

11    what it is entitled to: the full protection of a defense on its behalf." Montrose Chem. Corp. v.

12    Superior Court, 6 Cal. 4th 287, 295 (1993). In other words, "[t]o defend meaningfully, the insurer

13    must defend immediately." Buss, 16 Cal. 4th at 49. For this reason, the insurer cannot engage in

14    the "time consuming" exercise of "pars[ing] the claims, dividing those that are at least potentially

15    covered from those that are not." Id. If that were the case, the insurer could deprive the insured of

16    the very benefit they paid premiums for: "the mounting and funding of a defense." Id. Although

17    Twin City did not agree to mount a defense for the Plaintiffs, it nonetheless agreed to fund that

18    defense. See ECF No. 1 at 38, 21 (endorsement requiring Twin City to advance "reasonable and

19    necessary costs, charges, fees (including attorneys' fees and experts' fees) and expenses incurred

20    in the defense of a Claim . . . "). Like other defense obligations, the duty to advance defense costs

21    would be illusory if the insured had to wait for a determination of actual coverage to obtain the

22    necessary funding for its defense. Gray, 65 Cal. 2d at 271–72 ("The carrier's obligation to

23    indemnify inevitably will not be defined until the adjudication of the very action which it should

24    have defended."). As this Court has previously explained, "[t]he entire purpose of the duty to

25    advance defense costs is to ensure that a policyholder has the insurance proceeds available to

26    defend against an underlying action." ECF No. 138 at 7. Therefore, the need to interpret

27    insurance policies in a way that would not render coverage illusory further suggests that the duty

28    to advance defense costs is triggered by potential coverage. See Safeco Ins. Co. of Am., 26 Cal.

1   4th at 765.

2          The Court concludes that Twin City's duty to advance defense costs extends to costs

3   incurred defending against claims that are potentially covered under the policy.

4                          **ii.   The Allocation Provision Does Not Apply**

5          Next, Plaintiffs ask the Court to find that the Allocation provision does not apply and

6   therefore does not affect Twin City's duty to advance defense expenses. ECF No. 153-5 at 21.

7   Because this provision operates as "the functional equivalent of an exclusion to coverage," Twin

8   City bears the "burden of proving the allocation of the loss between covered and uncovered

9   losses." See PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co., 291 F. App'x 40, 41 (9th

10  Cir. 2008).

11         Twin City's duty to advance claims expenses is subject to the "Allocation" provision,

12  which is triggered when "both Loss covered under this Policy and loss not covered under this

13  Policy are incurred, either because a Claim against [Pacific Pulmonary Services] includes both

14  covered and uncovered matters or because a Claim is made against both [Pacific Pulmonary

15  Services] and others." ECF No. 1 at 24. In such a situation, Twin City and Pacific Pulmonary

16  Services agreed that they "shall use their best efforts to agree upon a fair and proper allocation of

17  such amount between covered Loss and uncovered loss" and, if they cannot agree, "[Twin City]

18  shall advance on a current basis Claims Expenses which [it] believes to be covered under this

19  Policy until a different allocation is negotiated, arbitrated, or judicially determined." Id.

20         Twin City argues that, to the extent it can understand the work described in Plaintiffs'

21  invoices, those invoices seek defense costs incurred responding to the ███████████████████

22  ████████████████, which this Court has already determined are not covered under the policy.

23  See ECF No. 157-5 at 12; ECF No. 52 at 8-9 ("████████████ do not constitute 'Claims' under

24  the Policy." The Policy does not cover Braden's costs incurred in responding to them."). As a

25  result, Twin City argues, the Allocation provision is triggered and Twin City is only required to

26  advance those claims expenses which it believes to be covered under the policy.

27         Plaintiffs respond that they only seek claims expenses for a single, covered Claim

28  comprised of the ████████████████████August 2013 demand letter and the ██████████████

                                          21

United States District Court
Northern District of California

██.[5]  See ECF No. 153-5 at 21-22.  Plaintiffs admit that defense costs incurred responding to ██

███████ are *not* covered under the policy, but they claim that they "removed . . . time entries

related to responding to ████████."  See ECF No. 161-4 at 7-9.; ECF No. 161-6 at 3.

After reviewing the relevant time entries and the communications between Twin City and

Plaintiffs on this issue, the Court concludes that Twin City has failed to present evidence that

would create a triable factual issue regarding whether Plaintiffs incurred uncovered loss such that

Twin City may rely on the Allocation provision.  Twin City tries to manufacture a factual issue by

pointing out that some of the time entries generally reference ██████████████████████

████████████████████████████████████████████████.  However, as Twin City

itself has acknowledged, the ████████████████ August 2013 demand letter, which is a

"Claim" under the policy, also proposed ████████████████████████████  See ECF

No. 89-9 at 2; ECF No. 153-14 at 3-4.  Therefore, the mere fact that a time entry references

████████████████████████████████████ does not

necessarily mean that it is related to ████████ and therefore uncovered.[6]

Moreover, Plaintiffs' defense costs cannot possibly relate to the uncovered ████████

because those costs were incurred long after ████████████████████████████████

████████████████████████████████████████████████

████████████████.  ECF No. 28-6, Ex. D at 148.  The Plaintiffs submitted

only invoices for defense costs commencing in August 2013.  Therefore, the defense costs claimed

by the Plaintiffs cannot possibly have been incurred in response to the uncovered ████████

████████.

Because Plaintiffs only seek defense costs incurred responding to a single, covered

Claim—the ████████████████ and the August 2013 demand letter—the Allocation

---

[5] The Court previously determined that the demand letter and the ████████████████
constitute a single "Claim" under the policy.  See ECF No. 116 at 19.
[6] Twin City also suggests that Plaintiffs' seek claims expenses for claims made against another
entity.  See ECF No. 157-5 at 13.  However, the only factual support for this assertion is a single
time entry that references a "[j]oint defense conference call."  ECF No. 157-8 at 3.  This single
time entry does not create a triable factual issue as to whether "a Claim [was] made against both
[Pacific Pulmonary Services] and others" such that the Allocation provision applies.  ECF No. 1 at
24.

United States District Court
Northern District of California

1    provision does not apply.[7]  In other words, Twin City may not rely on the Allocation provision

2    because there is nothing to allocate.  Twin City therefore retains its full duty to "advance . . .

3    Claims Expenses which [Plaintiffs] have incurred in connection with Claims made against

4    [Plaintiffs]."  ECF No. 1 at 38.

5                            **iii.  Reasonable and Necessary**

6            Finally, Twin City argues that Plaintiffs' invoices do not meet the policy's definition of

7    "Claims Expenses" because they are not "reasonable and necessary."  ECF No. 157-5 at 12-13.

8    Specifically, Twin City asserts that Plaintiffs "fail[] entirely to explain . . . how it could possibly

9    have reasonably and necessarily incurred millions of dollars in attorneys' fees defending against a

10   ██████████████████████."  Id.

11          The Court finds it impractical to determine at this stage of the proceedings whether the

12   defense costs incurred by Plaintiffs are reasonable and necessary to defend against the underlying

13   claim.  See Gon v. First State Ins. Co., 871 F.2d 863, 868–69 (9th Cir. 1989) (holding that it would

14   be "impractical" for the insurer to apportion covered and uncovered claims expenses prior to

15   judgment, in part because this might "deny the insureds the benefits of the protection they

16   purchased").  This is especially true given that Twin City does not point to specific expenses it

17   finds unreasonable or unnecessary, but simply asserts that the expenses must be unreasonable

18   based solely on the total amount incurred.  Such an exercise, in addition to being unworkable,

19   would potentially undermine the very benefit that the Plaintiffs paid premiums for: the

20   advancement of incurred claims expenses before the resolution of the ██████████████.  See

21   id.  Moreover, requiring Twin City to advance all incurred claims expenses now would not

22   prejudice Twin City because it has a right to repayment if the Court ultimately determines that

23   some of the expenses are not reasonable and/or necessary.  The Court therefore declines to address

24   this argument now, without prejudice to reconsideration at a later stage of the case.

25                                    **CONCLUSION**

26          For the foregoing reasons, the Court concludes that Twin City has a duty to advance

27

28   [7] In addition, the case law regarding mixed actions that Twin City relies on is inapposite.  See ECF
     No. 157-5 at 9-11.

United States District Court
Northern District of California

1   Plaintiffs' defense costs in the ▮▮▮▮▮▮▮ that is unaffected by the Allocation provision, the

2   Medical Incident Exclusion, or California law. The Court therefore grants Plaintiffs' motion for

3   partial summary judgment and denies Twin City's motion for partial summary judgment.[8]

4   Twin City shall reimburse Braden Partners its accrued, submitted defense costs within 30

5   days of this order, and shall reimburse Braden Partners its future defense costs within 30 days of

6   submission. These payments shall be subject to Twin City's right to demonstrate, in the second

7   phase of this litigation, that such costs were not "reasonable and necessary" such that Twin City

8   should be reimbursed all or part of them.

9   ///

10   ///

11   ///

12   ///

13   ///

---

[8] At the hearing on these motions, Braden Partners requested that the Court order Twin City to pay all of Braden's defense costs incurred to date by a date certain. Braden argues that Twin City waived its right to contest the reasonableness of those costs by denying coverage.

Braden Partners' authority does not support its position. Instead, the law is that when "the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the site investigation expenses, which are then presumed to be reasonable and necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary." Aerojet-Gen. Corp. v. Transp. Indem. Co., 17 Cal. 4th 38, 64 (1997), as modified on denial of reh'g (Mar. 11, 1998). In other words, even though it is presumed that Braden Partners' defense costs are reasonable and necessary, Twin City must be afforded the opportunity to demonstrate that they are not. See State v. Pac. Indem. Co., 63 Cal. App. 4th 1535, 1549 (1998) ("[T]he State has the burden of proving the existence of the amount of the expense, and Pacific Indemnity has the burden of showing that these costs are unreasonable. The State met its burden when it demonstrated the hours worked and provided testimony that the work was all related to the defense. Pacific Indemnity has provided no evidence to rebut that claim.").

No authority cited by any party describes whether this determination should be made prior to payment of defense costs or afterwards, incident to a request for reimbursement. As set forth *supra*, the Court concludes that requiring any allocation proceeding now – and again each time Braden Partners submits its defense costs for reimbursement – would frustrate the insured's reasonable expectations and deny it the benefits of the policy. The Court's therefore orders reimbursement to be made now.

The trial scheduled for February 13, 2017 and the pretrial conference scheduled for January 20, 2017 are vacated.

IT IS SO ORDERED.

Dated: December 20, 2016

_____
JON S. TIGAR
United States District Judge